# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION



FILED

SEP 2 0 2017

CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:16-CR-30176-RAL |
| Plaintiff, | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |
| vs. | |
| ROBERT DUWAYNE SPAID, | |
| Defendant. | |

Robert DuWayne Spaid is charged with being a felon in possession of a firearm and ammunition. He seeks to suppress, on Fourth Amendment and Exclusionary Rule grounds, evidence and statements acquired from him, his vehicle and home, following and as a result of a traffic stop. Because the stop and detention were reasonable and consonant with applicable law, and because the search warrant issued for his residence was valid (or at least objectively so), the suppression motion must be denied.

## BACKGROUND

Shortly before 4:30 p.m. on October 27, 2016, Hughes County Deputy Sheriffs Dalton Sack and Christopher Gross were riding together on patrol in Pierre, South Dakota. Deputy Gross spotted Spaid's pickup truck parked outside 1720 East Capitol Avenue, a suspected drug house. The deputy recognized the truck as being Spaid's.

And the deputy knew Spaid was a drug user, having arrested Spaid on drug offenses before.

After about five to ten minutes, Spaid came out of the residence, got in his truck and headed east on Capitol Avenue. The deputies followed him in their patrol car.

At the intersection of Capitol and Garfield Avenues, the deputies observed the truck stopped in the middle of the roadway (left of what would be considered the center of the street). They then watched the vehicle make a left-hand turn to go north onto Garfield Avenue without signaling. Seeing this, they turned and followed the truck as it proceeded in the left northbound lane of Garfield (a four-lane highway with two north and southbound lanes).

While behind the vehicle, the deputies noted that its driver's side wheels crossed the center line on two occasions. Deputy Sack activated the patrol car's overhead lights and siren. The truck though continued northbound. As it did, the deputies could see Spaid looking into his driver's side mirror at their car. Instead of changing lanes and pulling off to the right-hand shoulder of the highway,[1] the truck continued on in the left-hand lane for about another 32 seconds until it made a signaled left-hand turn and pulled into one of the spaces of the Runnings Farm and Fleet parking lot.

Deputy Sack approached the truck and asked Spaid for his driver's license, insurance for the vehicle and registration. Spaid was able to produce his driver's

---

[1]See SDCL 32-31-6.

license and registration but did not have proof of insurance. He was asked to accompany the deputy back to the patrol car. In response to questioning, Spaid said that he was coming from the courthouse. And he denied having anything in the truck he should not have – but refused to consent to a search of it.

Believing that there was something else going on and possible impairment involved, Deputy Sack (who was brand new to the job) asked Deputy Gross to take over as the primary on-scene deputy. Deputy Gross got into the patrol car, talked to Spaid, and performed two eye-related field sobriety tests on him over a span of about 6 minutes. While conversing, Spaid reiterated that he had just come from the courthouse and was not willing to allow the deputies to search his vehicle. Spaid also denied using any drugs even though one of the tests administered revealed a lack of right-eye convergence, an indicator of drug use.

In the meantime, Deputy Sack, and Chief Deputy Darin Johnson (who arrived to assist), stood outside Spaid's truck looking inside of it. At some point, they walked back toward the patrol car. Deputy Gross could tell that they had seen something in the vehicle of interest and spoke to them outside of the car. They informed him that they could see what was thought to be a marijuana pipe within the vehicle. Deputy Gross walked up to the truck, peered through the driver's side window of it, and observed the

mouthpiece of a pipe used to smoke marijuana (sticking out underneath the center console), and a "dugout"[2] (laying on the front driver's seat).

The deputies thereafter searched the truck, removing the pipe and dugout from the same. The dugout contained marijuana and a "one-hitter" pipe.

Spaid was placed under arrest, handcuffed and searched. Another "one-hitter" pipe was found on his person along with cash of $1,000 in his wallet.

While searching the vehicle, Deputies Sack and Gross located $95 in cash on the floorboard to it and a baggie of marijuana. The truck and Spaid's dog (which had been in it) were released, with his permission, to his sister, Robyn Auch.

About an hour after transporting Spaid to the Hughes County Jail and upon learning that he had been earlier convicted in state court of a felony drug offense, Deputy Sack traveled to Auch's residence where Spaid's vehicle was now parked. With Auch present, the deputy took possession of a .22 caliber rifle that both he and Deputy Gross observed earlier wedged in the folded-up backseat of the truck.

Based on the information obtained from the traffic stop, Deputy United States Marshal Matthew Sikes obtained a search warrant for Spaid's home. The warrant was executed on November 23, 2016. Drug paraphernalia, 12-gauge shotgun shells, and .22 caliber rifle rounds were found and seized from the residence.

---

[2]Simple, small wooden box with a sliding or rotating lid that contains two chambers; the larger is for carrying marijuana and the smaller for the cigarette size pipe (or bat), http://www.urbandictionary.com.php?term=dugout (last visited Sept. 19, 2017).

Less than a month later, Spaid was indicted on felon in possession of a firearm and ammunition charges. After being arraigned and pleading not guilty to both charges, he moved to suppress from use at trial the evidence seized from his truck and home and statements he made to the deputies after being stopped. An evidentiary hearing was held on the motion at which three witnesses testified and twelve exhibits were received into evidence.

## DISCUSSION

### 1. Stop

Spaid initially claims that Deputies Sack and Gross lacked reasonable suspicion to stop his vehicle. He says that the deputies did not have specific and articulable facts to establish reasonable suspicion for the stop. As a consequence, he says, the stop violated his Fourth Amendment rights.

The stop of a motor vehicle is a "seizure" of its occupants that must be conducted in accordance with the Fourth Amendment.[3] A traffic stop is legal and comports with this Amendment if it is supported by probable cause to believe that a violation of law has occurred.[4] An officer has probable cause to conduct such a stop when he observes any minor traffic violation.[5]

---

[3]*See Brendlin v. California,* 551 U.S. 249, 255-59 (2007).

[4]*See Whren v. United States,* 517 U.S. 806, 810 (1996).

[5]*See United States v. Sallis,* 507 F.3d 646, 649 (8th Cir. 2007); *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir. 1994) (*en banc*), *cert. denied,* 514 U.S. 1113 (1995).

A traffic stop can also be justified by a lesser showing of "reasonable suspicion" under the *Terry*[6] standard.[7]   Officers making a *Terry* stop "must be able to articulate something more than a 'inchoate and unparticularized suspicion' or 'hunch.'"[8]   The Fourth Amendment requires some minimal level of "objective justification" for making the stop.[9]   Probable cause means "'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."[10]   There must be "a 'particularized and objective basis' for suspecting criminal activity at the time the stop is made."[11]

"Reasonable suspicion, like probable cause, is dependent upon the content of information possessed by [officers] and its degree of reliability.  Both factors – quantity and quality – are considered in the 'totality of the circumstances – the whole picture' that must be taken into account when evaluating whether there is reasonable suspicion."[12]   If the stop is not supported by reasonable suspicion or if the officers

---

[6]*Terry v. Ohio*, 392 U.S. 1 (1968).

[7]*See Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014); *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007).

[8]*United States v. Sokolow*, 490 U.S. 1, 7 (1989) (*quoting Terry*, 392 U.S. at 27).

[9]*INS v. Delgado*, 466 U.S. 210, 217 (1984).

[10]*Sokolow*, 490 U.S. at 7 (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[11]*United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002).

[12]*Alabama v. White*, 496 U.S. 325, 330 (1990) (*quoting United States v. Cortez*, 449 U.S. 411, 417 (1981)).

exceed the proper scope of the stop, then any evidence derived therefrom must be excluded from trial.[13]

Deputies Sack and Gross stopped Spaid's vehicle for two traffic violations. The first one was for failing to signal before making a left-hand turn onto Garfield Avenue.[14] The second was for crossing the center line on Garfield two times in violation of the "practicable lane statute."[15]

Spaid contends that there was no signal violation because no other vehicle was "affected" by the turn.[16] But the state statute "does not define what distance or condition renders a vehicle 'affected'"[17] and the South Dakota Supreme Court has likewise provided no specific parameters except to say that it is not unlawful to turn without using a signal where "[t]here [is] no traffic on the street at the time other than [the] defendant's car and the [officer's] patrol car [following] about a quarter of a block behind."[18] Although there is one federal case in this district that may arguably support

---

[13]See *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001), *cert. denied*, 537 U.S. 850 (2002)

[14]See SDCL 32-26-18, -18.1.

[15]See SDCL 32-26-6.

[16]See SDCL 32-26-22.

[17]*United States v. Rodriguez-Lopez*, 444 F.3d 1020, 1022 (8th Cir. 2006).

[18]*State v. Eidahl*, 495 N.W.2d 91, 92 (S.D. 1993).

Spaid's contention,[19] the case is factually distinguishable from his case. Unlike in that case, here Spaid had vehicles behind and on the passenger side of him as he turned. And he had two other vehicles pass in front of him and a third vehicle turn next to his driver's side as he sat in the middle of Capitol Avenue preparing to make his turn. Other cases interpreting "affected" turn statutes very similar to South Dakota's have upheld traffic stops, similar to the one in this case, where the driver made an unsignaled turn.[20]

Spaid also maintains that he did not drive out of his lane as he traveled northbound on Garfield Avenue. Deputies Sack and Gross testified otherwise and they were credible witnesses. The lane driving alone was enough to provide the probable cause necessary to support stopping Spaid's vehicle.[21]

---

[19]*See United States v. Little*, No. CR 09-50099-JLV, 2010 WL 1428448 (D.S.D. April 7, 2010).

[20]*See United States v. Burciaga*, 687 F.3d 1229, 1232-35 (10th Cir. 2012); *United States v. Mercer*, No. 2:13-CR-176-GZS, 2014 WL 2216999 at **7-10 (D. Me. May 29, 2014), *aff'd*, 834 F.3d 39 (1st Cir. 2016); *United States v. Correa*, 881 F.Supp.2d 272, 278 (D. R.I. 2012); *Jackson v. State*, No. 2348, Sept. Term 2013, 2016 WL 687557 at **6-9 (Md. Ct. Spec. App. Feb. 18, 2016); *State v. Salcido*, 238 Ariz. 461, 464-65, 362 P.3d 508, 511-12 (Ct. App. 2015); *Johnson v. State*, 2013 OK CR 12, ¶¶9-12, 308 P.3d 1053, 1055-56; *People v. Behrens*, No. G040222, 2009 WL 1766729 at *2 (Cal. Ct. App. June 23, 2009); *State v. Moss*, 277 N.J. Super. 545, 547, 649 A.2d 1349, 1350 (App. Div.1994); *see also People v Logsdon*, 164 Cal. App.4th 741, 744-47, 79 Cal. Rptr.3d 379, 381-83 (2008) (trial court acted within its discretion in finding that patrol car within 100 feet of defendant's car, traveling in the same lane and at the same speed, was affected by defendant's unsignaled lane change, supporting officer's detention of defendant under the Fourth Amendment).

[21]*See United States v. Herrera Martinez*, 354 F.3d 932, 934 (8th Cir. 2004), *vacated on other grounds*, 549 U.S. 1164 (2007); *United States v. Carrasco-Ruiz*, 587 F.Supp.2d 1089,

(continued...)

Regardless, as the text indicates and the United States Supreme Court has repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'"[22] "To be reasonable is not to be perfect, and the [ ] Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law and the community's protection.'"[23] The Supreme Court has recognized that searches and seizures based on mistakes of fact can be reasonable.[24]

---

1099 (D.S.D. 2008); *State v. Hett*, 2013 S.D. 47, ¶¶ 16, 19-20, 834 N.W.2d 317, 323-24; *State v. Ballard*, 2000 S.D. 134, ¶ 11, 617 N.W.2d 837, 840; *see also United States v. Harmon*, 742 F.3d 451, 458 (10th Cir. 2014) (there was "reasonable suspicion of impairment" where, absent "difficult driving conditions or adverse weather, the vehicle was observed "weaving and, in one instance, crossing the fog line" with right-side wheels); *United States v. Riley*, 684 F.3d 758, 761-62 (8th Cir.) (despite the lack of video evidence that showed defendant twice crossed the center line, trooper testified that the stop was because of weaving and this testimony was consistent with the portion of the traffic stop captured on video), *cert. denied*, 568 U.S. 1073 (2012); *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1107 (8th Cir. 2007) (upholding a vehicle stop based upon officer's observation of vehicle crossing fog line once for 10 to 15 seconds under an Iowa practicable lane statute similar to South Dakota's); *Dods v. State*, 240 P.3d 1208, 1211-12 (Wyo. 2010) (single instance of crossing fog line can be a violation of the practicable lane statute); *State v. Wolfer*, 2010 N.D. 63, ¶¶7-9, 780 N.W.2d 650, 652-53 (one foot cross over of fog line for two seconds created reasonable suspicion that driver had violated the state's practicable lane statute and justified an investigatory stop); *Edwards v. State*, 143 Md. App. 155, 171, 792 A.2d 1197, 1206 (2002) (holding that police had probable cause to stop defendant because he, at least once, crossed the center line of an undivided two-lane road by as much as a foot).

[22]*Riley v. California*, 134 S.Ct. 2473, 2482 (2014).

[23]*Heien*, 135 S.Ct. 536 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

[24]*See Heien*, 135 S.Ct. at 536.

And the Court has done so for mistakes of law, including ones made in the context of an investigatory stop of a vehicle for a traffic violation.[25]

The real question at this stage is not whether Deputies Sack and Gross erred in interpreting the state turn signal and "practicable lane" statutes and believing that Spaid had violated them, but whether the deputies so obviously erred that no objectively reasonable officer could have reached the same conclusion they did at the time of the stop. Stated differently and more succinctly, was it reasonable for the deputies to suspect that Spaid's driving was illegal? If so, then there was no violation of the Fourth Amendment.

The Amendment leaves room for reasonable mistakes in determining whether a motorist has violated a state's traffic laws – so long as the mistakes are objectively reasonable.[26] The Eighth Circuit has consistently upheld traffic stops where "an expert defense attorney, and even a federal judge, ultimately might conclude that the plain language of the [statute] technically requires" a different legal conclusion than that reached by officers in the field.[27]

---

[25]See id. at 537-40.

[26]See Heien, 135 S.Ct. at 539; see also United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005) ("[A] misunderstanding of traffic laws, if reasonable, need not invalidate a stop made on that basis."); State v. Lerma, 2016 S.D. 58, ¶¶ 10-11, 884 N.W.2d 749, 752 (objectively reasonable for officer to believe that defendant's inoperative left brake light constituted a violation of law so as to provide the suspicion necessary to make the traffic stop reasonable under the Fourth Amendment).

[27]Rodriguez-Lopez, 444 F.3d at 1022-23; Martin, at 1001-02; Herrera Martinez, 354
(continued...)

Hence, even if the deputies were wrong about whether the turn signal and "practicable lane" statutes were infringed, their errors of law were reasonable. They should not be expected to interpret statutes with the subtlety and expertise of a judge or lawyer but only that they understand and apply the laws to a level that is objectively reasonable. Given the state of the law at that time (and now) and what they saw and testified to, any mistake of law they may have made was reasonable and enough to support a probable cause stop of the vehicle.[28]

In any event, if Spaid's unsignaled turn and lane driving were not sufficient – by themselves – to warrant stopping Spaid's vehicle, there were other facts that gave the

---

F.3d at 934; *see also Heien*, 135 S.Ct. at 540 (because it was objectively reasonable for officer to think that defendant's faulty right brake light was a violation of state law, there was reasonable suspicion to justify the stop); *United States v. Bowers*, 678 Fed. Appx. 460, 461 (8th Cir. 2017) (reasonable suspicion can be based on an objectively reasonable mistake of law); *United States v. Gadson*, 670 Fed. Appx. 907, 909 (8th Cir. 2016) (even if officer was mistaken in his belief that signaling was required before exiting the traffic circle, his error of law was reasonable; objectively reasonable officer in his position could have believed that defendant was required to use his turn signal); *United States v. Hastings*, 685 F.3d 724, 727-28 (8th Cir. 2012) (declining to determine whether motorist's conduct "in fact" violated state law "because it was objectively reasonable for [officer] to conclude that it did"), *cert. denied*, 568 U.S. 1134 (2013); *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (refusing "to parse the words of [a] statute in deciding whether [officer] had probable cause to stop the vehicle" because officer had an objectively reasonable basis for believing motorist breached a traffic law regardless of whether an actual violation existed); *Lerma*, 2016 S.D. 58, ¶¶8-11, 884 N.W.2d at 751-52 (officer's belief that the applicable statute required all brake lights (however many) to be operable, as justification for initiating traffic stop due to one of the three brake lamps being inoperable, was an objectively reasonable mistake of law).

[28]*See and compare State v. Spaid*, No. 32CRI16-837, order, *fof & col* (S.D. Cir. Ct. July 5, 2017) (found at Dkt. No. 39-2) (failing to address whether deputies made an objectively reasonable mistake of law).

11

deputies reasonable suspicion to stop the vehicle. Spaid, a known drug user, parked at, went into, and left a residence associated with drug activity. He also stopped his vehicle left of where he should of on Capitol Avenue before making his turn. And he failed or refused to heed to emergency lights and siren (after seeing them in his mirror) and move over to the edge, curb or shoulder of the highway. Instead, he chose to stay the course, and remain in the inside lane, for another 30 plus seconds before ultimately turning into the Runnings parking lot. This noncompliant behavior, together with Spaid's abbreviated visit to a suspected drug house, his mid-street stop, and his driving mannerisms were enough, in their totality, to provide the deputies with reasonable suspicion to stop him.[29]

For all of these reasons, the Court concludes that Deputies Sack and Gross had reasonable suspicion to stop Spaid's vehicle. As such, his claims cannot succeed and he cannot obtain relief based on his stop being unlawful.

## 2. Detention, Search, and Arrest

Spaid next claims that he was illegally seized, in violation of the Fourth Amendment, because Deputies Sack, Gross and Johnson lacked the requisite reasonable suspicion to lengthen the stop. He argues that the stop was unnecessarily prolonged

---

[29]*See United States v. Walker*, 555 F.3d 716, 720-21 (8th Cir. 2009); *Hett*, 2013 S.D. 47, ¶¶ 17-19, 834 N.W.2d at 323-24; *see and compare Little*, 2010 WL 1428448 at *4 ("sole" reason for stopping defendant's vehicle was his "failure to use his turn signal when moving from the right land"; there was "no other suspicion of criminal conduct or justification for the stop.").

and that he should have been released after being ticketed for not being able to produce proof of insurance.

Officers conducting a traffic stop who discover information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation.[30] To do so, they must have "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrants suspicion that a crime is being committed."[31] Whether the officer has "reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of [their] experience[s]."[32]

The rub here is whether the three deputies had the necessary "reasonable suspicion" to detain Spaid after he was unable to show that he had insurance on his vehicle. This requires the Court determine whether the facts collectively, rather than separately, establish a basis for reasonable suspicion.[33] The behavior in which

---

[30]See *United States v. Woods,* 829 F.3d 675, 679 (8th Cir. 2016); *United States v. Anguiano,* 795 F.3d 873, 876 (8th Cir. 2015).

[31]*United States v. Shafer,* 608 F.3d 1056, 1062 (8th Cir. 2010) (quoting *Terry,* 392 U.S. at 21).

[32]*Id.* (quoting *United States v. Gill,* 513 F.3d 836, 844 (8th Cir. 2008)).

[33]See *United States v. Stachowiak,* 521 F.2d 852, 856 (8th Cir. 2008).

reasonable suspicion is grounded need not show that the suspect is probably guilty, or even eliminate innocent interpretations.[34]

Officers are allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."[35] Deputies Sack and Gross provided various reasons for suspecting that Spaid was involved in criminal activity. The reasons were plausible and made sense. And their suspicions grew over the course of the traffic stop as circumstances unfolded and more facts were uncovered.[36]

At the time of the stop, the deputies had reason to believe that Spaid was driving while impaired. He had just been to and departed from a residence the deputies were familiar with from past reports and arrests made at it. He stopped left of center in a busy street, turned onto a highway without signaling, crossed over the solid lane divider of the highway two times, continued to drive for a while after seeing the deputies behind him with their lights and siren on, and then made another left-hand turn off the highway into a parking lot rather than pulling over to the right.

---

[34]See United States v. Stewart, 631 F.3d 453, 457 (8th Cir. 2011).

[35]United States v. Arvizu, 534 U.S. 266, 270-71 (2002).

[36]See United States v. Murillo-Salgado, 854 F.3d 407, 415-16 (8th Cir. 2017), pet. for cert. filed (U.S. July 19, 2017) (No. 17-5303); United States v. Bowman, 660 F.3d 338, 343-44 (8th Cir. 2011).

Once stopped and in the patrol car, Spaid was unable to provide proof of insurance. He was untruthful with both Deputies Sack and Gross about where he was traveling from and became agitated. Curiously, he had his hard hat on after leaving a residence in town (which he continued to wear while in the patrol car). He said he had not used any drugs or alcohol that day but a field sobriety test showed possible drug use. He also twice denied there was anything in his truck that should not be there but refused to allow it to be searched after being separately asked. What's more, when probed about the marijuana pipe the deputies observed, he insisted that he did not know the pipe was in the vehicle. And he refused to disclose when he last used marijuana.

These facts and circumstances, when taken together, provided reasonable suspicion to detain Spaid. Common sense judgments and inferences about human behavior, when combined with the inculpatory evidence and information gathered at the scene, supported the deputies' belief that Spaid was using illegal drugs and in possession of them and drug paraphernalia.

Of course, there may have been innocent explanations for the deputies' suspicions. Even so, facts that, by themselves, may be innocent can, when viewed altogether, give rise to reasonable suspicion. The *Terry* case is a fitting example of this.

Taking into account all of the relevant facts, the deputies had the reasonable suspicion needed to extend the *Terry* stop. Spaid's 10-15 minute detention was not

unreasonable under the Fourth Amendment and thus cannot serve as a basis for the suppression of the contraband discovered in his truck.

The warrantless search of the truck was reasonable as well under the "automobile exception" to the warrant requirement because the deputies had probable cause to believe that the vehicle contained contraband or other evidence of a crime before the search began.[37] And once the deputies found the marijuana pipe and "dugout," they had probable cause – based on the information available to them and fair inferences drawn therefrom – to arrest Spaid without a warrant.[38]

Ever persistent, Spaid complains about Deputy Sack reaching into the truck and petting the small dog who had been barking at the deputy from the interior of the vehicle. This *de minimis* intrusion though did not rise to the level of an unreasonable search for purposes of the Fourth Amendment – especially since the petting does not appear to have been done for some ulterior or nefarious purpose.[39] Nor was the

---

[37]*See United States v. Ross*, 456 U.S. 798, 825 (1982); *United States v. Shackleford*, 830 F.3d 751, 753-54 (8th Cir. 2016); *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004).

[38]*See Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Watson*, 423 U.S. 411, 423-24 (1976).

[39]*See New York v. Class*, 475 U.S. 106, 117-19 (1986); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *see also State v. Aubin*, 622 A.2d 444, 445-46 (R.I. 1993) (leaning into a stopped vehicle, like the order to the driver to step out upheld in *Mimms*, "was a *de minimis* intrusion and did not violate the Fourth Amendment").

intrusion one that invaded an expectation of privacy that society is prepared to recognize as "reasonable."[40]

Spaid likewise finds fault with Deputy Sack's retrieval of the .22 caliber rifle from the truck at Auch's residence. He insinuates that the rifle could not be taken without his consent or a warrant.

But the automobile exception provided the deputy with a legal gateway for the search and seizure of the rifle. There is no temporal limit to the exception; a warrantless search need not occur contemporaneously with a vehicle's initial seizure. If officers have probable cause to search the vehicle in the first instance, then they can search it again later on – especially where, as here, the delay in doing so is minimal (just over an hour).[41]

Besides, Auch gave Deputy Sack consent to remove the rifle. Spaid released the truck to her and it was parked at her home when the deputy arrived. At that time, she had common authority and dominion over the vehicle and the contents of it. Based on his interactions with Auch (personally and on the phone), the information known to him, and the circumstances outside her residence, the deputy could reasonably believe

---

[40]*Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring).

[41]*See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Blaylock*, 535 F.3d 922, 926-29 (8th Cir. 2008) (majority and concurring ops.), *cert. denied*, 558 U.S. 830 (2009); *United States v. Brookins*, 345 F.3d 231, 237-38 (4th Cir. 2003); *see generally* 3 Wayne R. LaFave, *Search and Seizure*, §§7.2(a), (b) (5th ed. 2012 & 2015-16 Supp.).

that she had the apparent authority to allow him to go back into the truck and confiscate the rifle.[42]

### 3. Questioning and Statements

Although not altogether clear from his filing, it looks like Spaid wants to keep out, using the Fourth Amendment as the fulcrum for his claim, the statements he made to the deputies while being detained. His motion alludes to this and his supporting memorandum seemingly takes issue with the "interrogation" he was subjected to after being stopped.

The driver of a vehicle, however, may be detained while officers "complete[ ] a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning."[43] To that end, "a reasonable investigation during a traffic stop 'may include asking for the driver's license and registration, requesting the driver to sit in a patrol car, and asking [him] about his destination and purpose.'"[44] Asking off-topic questions, such as whether he is carrying illegal drugs, during an otherwise lawful traffic stop, does not violate the

---

[42]*See Illinois v. Rodriguez*, 497 U.S. 177, 181, 185-86 (1990); *United States v. Matlock*, 415 U.S. 164, 171 (1974); *United States v. Chavez Loya*, 528 F.3d 546, 554-55 (8th Cir. 2008); *see generally 4 Search and Seizure*, §8.3(g).

[43]*United States v. Bracamontes*, 614 F.3d 813, 816 (8th Cir. 2010) (citation omitted).

[44]*United States v. White*, 81 F.3d 775, 778 (8th Cir.) (citation omitted), *cert. denied*, 519 U.S. 1011 (1996).

Fourth Amendment.[45]    The same is true of a request for consent to search, in the absence of coercion or otherwise unusual circumstances.[46]

Presumably, Spaid's suppression of statements claim is based on the deputies' method of questioning amounting to an unreasonable search. There is authority to support such a claim. In *United States v. Peralez*[47], the Eighth Circuit found a Fourth Amendment violation because a trooper's "blended process" of conducting a drug interdiction investigation unreasonably extended a run-of-the-mill traffic stop.[48] Significantly, the trooper in *Peralez*, asked "off-topic" drug activity questions that "more than doubled" the time the driver and his passenger were detained.[49] And the appeals court observed that there was "[n]othing unusual [that] occurred during the traffic stop or "out of place with… the driver's documents."[50] The court went on to hold that the "extent and duration of the trooper's focus on non-routine questions prolonged the stop 'beyond the time reasonably required' to complete its purpose," thereby resulting in an unreasonable seizure.[51]

---

[45]*See United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008).

[46]*See id.*

[47]526 F.3d 1115 (8th Cir. 2008).

[48]*See id.* at 1120-21.

[49]*Id.* at 1121.

[50]*See id.* at 1120-21.

[51]*Id.* at 1121 (citation omitted).

Notably, Spaid's claim is premised on a violation of the Fourth Amendment, not *Miranda* or Fifth Amendment transgressions. *Peralez*, which at first blush may be helpful to him, does not control this case.[52] The court's holding there – that the officer unreasonably lengthened the traffic stop – was not necessary to its ultimate ruling, i.e. that the evidence need not be suppressed. Because the officer's decision to conduct a "dog sniff" was not the consequence of a constitutional violation,[53] the court's statements concerning the unlawfully extended stop were non-binding dicta.[54]

At any rate, the deputies' questioning did not rise to the level of that used by the trooper in *Peralez*. Their questions did not double the amount of waiting time and stretch the traffic stop beyond its limits. Nor did their questions, for the most part, result in inculpatory responses or in the waiver of Spaid's right to insist on a warrant before the deputies could search for and seize evidence. And, unlike the circumstances in *Peralez*, where "there was 'absolutely not' anything" about the defendant's actions or comments that caused the trooper to be concerned that criminal activity was afoot when

---

[52]*See United States v. Suitt*, 569 F.3d 867, 871 (8th Cir.) (observing that the contraband evidence in *Peralez* was still not suppressed so that the "court's statements concerning the unlawfully extended stop are non-binding dicta"), *cert. denied*, 558 U.S. 1003 (2009).

[53]*See id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)).

[54]*See Riley*, 684 F.3d at 765; *Suitt*, 569 F.3d at 871 (citing *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 550 (8th Cir. 1990), *cert. denied*, 500 U.S. 905 (1991)).

he began asking questions, Spaid's stop was not unlawfully held over given what the deputies observed (both before and after the stop), their knowledge that he had been a drug user and arrested before, the implausibilities and inconsistencies in his responses to questions, and the suspicions that developed at the scene.[55] This being the case, the traffic stop did not exceed the constitutional bounds set forth in *Rodriguez*[56] – cited by Spaid – or Eighth Circuit precedent.[57]

## 4. Tainted Fruit

Spaid lastly claims that the evidence and statements obtained from him were the tainted fruit of a poisonous tree and should be suppressed under the Exclusionary Rule. He claims further that the search warrant executed at his house should be invalidated because it was based wholly on illegally-obtained evidence. On the latter claim, he asserts that excising all references to this evidence from the warrant affidavit leaves the affidavit utterly devoid of probable cause.

---

[55]*See id.* at 1120 (acknowledging that "an officer may extend or expand the scope of a traffic stop beyond the original justification for the stop... if the officer develops reasonable suspicion that other criminal activity is afoot").

[56]*Rodriguez v. United States*, 135 S.Ct. 1609 (2015).

[57]*See Murillo-Salgado*, 854 F.3d at 414-16; *Woods*, 629 F.3d at 679-80; *Anguiano*, 795 F.3d at 676-77; *see also United States v. Trejo*, No. 3:14-CR-30138-RAL, 2015 WL 4392845 at ** 4-6 (D.S.D. May 4, 2015) (trooper's proffered suspicions that defendant was engaged in criminal activity were reasonable and provided a legitimate basis for continued detention – a question *Rodriguez* left open for consideration on remand), *r & r adopted in part*, 135 F.Supp.2d 1023 (2015).

Spaid's claims are contingent upon there being encroachments of the Fourth Amendment incident to his stop and detention. But because the deputies did not skirt this Amendment or overstep their authority, there is no "poisonous tree" for any "tainted fruit" to grow or fall from. It follows then that:

a. The evidence and statements obtained from Spaid were properly included and considered as a basis for probable cause to believe that there were firearms, ammunition, and drugs in his residence;

b. Deputy Sikes's affidavit, as written, provided probable cause for the issuance of the search warrant for the home;

c. The warrant was valid (or could objectively be relied on as such);[58] and

d. The evidence and statements may be used against Spaid at trial, whether he testifies or not.

## CONCLUSION

The deputies did not violate Spaid's Fourth Amendment rights or the Exclusionary Rule so as to mandate the suppression of evidence seized and statements he made after being stopped. The stop was lawful because there was probable cause to believe that he had committed one or more traffic violations or an objectively

---

[58]*See United States v. Farlee*, 757 F.3d 810, 818-20 (8th Cir.), *cert. denied,* 135 S.Ct. 504 (2014); *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *United States v. Guzman*, 507 F.3d 681, 685-86 (8th Cir. 2007); *United States v. Ross*, 487 F.3d 1120, 1122-26 (8th Cir. 2007).

reasonable basis for this belief, and because there were particularized grounds for suspecting him of breaking the law. Although not free to leave for some time after being stopped, Spaid's detention was independently warranted by reasonable suspicion of criminal (drug-related) activity. A whole host of factors (including those captured on a dashcam video), when taken together, provided the suspicion necessary to expand the stop. And there is no reason to exclude the evidence and statements as "tainted fruit," invalidate the warrant, and keep out the evidence seized under the authority of it. The law, as applied to Spaid's case, foils his ability to suppress the evidence and statements the Government has, and stands ready to use, against him at trial.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Spaid's Motion to Suppress[59] be denied in its entirety for the reasons, and based on the authorities, discussed and referred to herein.

## NOTICE

The parties have agreed to seven calendar days after service of this report and recommendation to file their objections to the same.[60] Unless an extension of time for cause is later obtained,[61] failure to file timely objections will result in the waiver of the

---

[59]*See* Dkt. No. 37.

[60]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[61]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

right to appeal questions of fact.[62]   Objections must "identify[] those issues on which further review is desired[.]"[63]

DATED this 19th day of September, 2017, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[62]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[63]*Arn*, 474 U.S. at 155.